Argued and submitted May 3, judgment modified in part; otherwise affirmed
October 16, 2002

In the Matter of the Marriage of

Katherine Irene McDUFFY,
*Respondent,*
*and*
Vern Frederick McDUFFY,
*Appellant.*

99C-30523; A111660

56 P3d 449

Monty K. VanderMay argued the cause and filed the briefs for appellant.

Mark G. Obert argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

KISTLER, J.

**KISTLER, J.**

Husband appeals from a judgment of dissolution in which the trial court assigned a value for goodwill to husband's business and ordered that he sell some business assets to satisfy a line of credit debt and reduce an equalizing judgment. Husband contends that the assignment of goodwill is not supported by any evidence in the record and that ordering him to sell the business assets takes away his ability to earn income. We modify the judgment in part.

Husband and wife were married for approximately 23 years. Wife has a high school education and husband has completed the ninth grade. After the couple were married, they started a trucking business. Both husband and wife worked in the business. During the course of their marriage, husband and wife acquired numerous trucks and other vehicles for business and personal use. They also acquired two pieces of real property. Their home and a rental property are located on one piece of property on Wejocuma Lane. The second piece of property, on Marion Hill, is used solely as an investment property.

Husband and wife separated in 1999, and wife filed for divorce that year. At the dissolution hearing, the parties agreed that their marital property should be divided equally. They differed, however, over the best way to divide it. Wife asked for the Marion Hill property and one vehicle; she asked that the rest of the couple's property go to husband, with the difference in value between the division of assets made up through an equalizing judgment in her favor. Husband asked for the Wejocuma Lane property, as well as some of the business and personal cars and trucks. Husband requested that the remaining vehicles be given to wife, including a 1959 Corvette.

At trial, both parties presented evidence regarding the value of the real property, and the court ultimately determined that the Wejocuma property was worth $175,000 and that the Marion Hill property was worth $115,000. The couple owed approximately $23,200 on the Wejocuma property and approximately $21,800 on the Marion Hill property. Rob Brattain, the general manger of Brattain International

Trucks, testified as to the value of seven of the business trucks.[1] Additional testimony regarding the trucking company revealed that the business did not have any value beyond the net value of the business assets.[2] At the time of trial, husband ran the business by himself; he had had little to no work recently. Husband was uncertain how long he could continue running the business; wife was working elsewhere at the time of trial and planned on doing so for the foreseeable future.

After hearing the evidence, the trial court awarded husband the business, subject to its debts, the Wejocuma Lane property, his personal property, and most of the cars and trucks that the couple had used for personal use. The court also awarded husband the 1959 Corvette, which the court valued at $30,000. The court awarded wife one personal truck, her personal property, and the Marion Hill property. In valuing the business, the court added $10,000 for goodwill to the net value of the business's assets. In its judgment of dissolution, the court increased the value of the business by the amount of goodwill it had found, divided the parties' assets consistently with its letter opinion, and included the following directions to husband:

> "Respondent is ordered to immediately sell, at a commercially reasonable sale, as many business vehicles, including trailers, as necessary to payoff [sic] the balance of the Wells Fargo Advanceline debt. Respondent shall include within the immediate commercially reasonable sale such other business vehicles, including trailers, as directed by Petitioner, to reduce or satisfy the equalizing judgment awarded Petitioner by this Judgment of Dissolution. Petitioner and Respondent may bid at the sale and each may purchase some of the business vehicles prior to the sale on whatever terms or conditions the other accepts.

> "* * * * *

> "Petitioner is awarded judgment against Respondent in the amount of $120,451 to [equalize] the division of the parties'

---

[1] Although it is not entirely clear from the record whether the trial court accepted Brattain's testimony, it appears to have done so.

[2] Husband had also taken out a business line of credit for approximately $40,000, on which he was making monthly payments.

assets. The judgment will be reduced by the sale of the trucking business assets. After satisfaction of the Wells Fargo Advanceline debt, Petitioner's judgment shall be reduced and satisfied in an amount equal to the proceeds disbursed to Petitioner. The resulting judgment balance against Respondent shall be secured by a second mortgage on the property and improvements on Wejocuma. Respondent shall promptly execute and deliver to Petitioner a mortgage securing the judgment debt of $120,451."

On appeal, husband argues that the trial court erred in several respects. We address only his first and fifth assignments of error. We affirm without discussion the other rulings to which husband assigns error. In his first assignment of error, husband contends that the trial court erred when it assigned $10,000 of goodwill to the trucking business. Specifically, he contends that there is no evidence in the record to support the trial court's ruling. In his fifth assignment of error, husband argues that the court erred when it ordered him to sell the business assets in order to pay the line of credit and satisfy part of the equalizing judgment. Husband reasons that the court denied his request for spousal support because he could earn a certain level of income but deprived him of his ability to produce that income when it ordered him to sell the business assets. In response, wife argues that husband did not preserve his argument regarding goodwill and that ordering husband to sell his assets is just and equitable under the circumstances.

We begin with the question whether husband preserved his argument that the trial court erred in assigning a goodwill value to the business. We note initially that both parties agreed at trial that there was no goodwill value to the business. Wife testified that there were no steady customers and that, if husband left the business, there would be nothing left to the trucking company other than the assets. Although the court encouraged the parties to consider the issue, counsel for both husband and wife conceded that there was no goodwill to be had and that they simply did not think that the business was worth valuing as a going concern. Nevertheless, at the end of trial, the court assigned $10,000 of goodwill to the trucking business. The trial court issued its opinion letter in March 2000 assigning a goodwill value to the business and

issued its judgment in August 2000. Between that time, husband did not object to the trial court's assignment of goodwill. It is this lack of objection that leads wife to conclude that husband did not preserve his argument.

We agree with wife that husband did not properly preserve his objection to the trial court's decision on goodwill. *See McDougal v. Griffith*, 156 Or App 83, 86-87, 964 P2d 1135 (1998), *rev den*, 328 Or 330 (1999) (holding that a plaintiff who did not object to the trial court's memorandum opinion giving defendants more on their counterclaim than they had requested had not preserved that issue for appeal). However, we may reach this issue under the plain error doctrine. Under ORAP 5.45(4)(b), we may consider errors of law apparent on the face of the record, notwithstanding a failure to preserve the error below. Under the plain error doctrine, we must determine whether the error about which the party complains is one of law apparent on the face of the record and, if so, "whether we will exercise our discretion to consider it." *State v. Hockersmith*, 181 Or App 554, 558, 47 P3d 61 (2002). In this case, the error is an apparent one, or, stated differently, the legal point "is obvious, not reasonably in dispute." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). As we explain below, goodwill may not be attributed to a business if there is no evidence in the record to support it. Here, all the parties agreed at trial that there was no goodwill, and, on appeal, both husband and wife concede that neither party presented evidence that would support the trial court's ruling. The complete absence of evidence is an issue of law that is, on this record, apparent.

We also exercise our discretion to consider the error. In this case, both parties told the court the reasons they would not or could not assign a goodwill value to the business; yet, the court nevertheless did so. This case is thus like *Brown*, where both parties put the court on notice of the problem. *See* 310 Or at 356. It also differs from *Hockersmith*, in which we refused to exercise our discretion to reach an error when the defendant stipulated to facts contained in exhibits but then "stood idly by as the trial court ruled without formally admitting [those exhibits] into evidence." *Hockersmith*, 181 Or App at 558. If the defendant in *Hockersmith* had raised the lack of evidence in a timely fashion, the error could

have been corrected. Here, in contrast, the parties in this case raised the lack of evidence of goodwill on several occasions, and it is an appropriate case in which to reach the issue.

██ A business will normally have a value, "over and above the value of its assets, known as 'goodwill' value." *Maxwell and Maxwell*, 128 Or App 565, 568, 876 P2d 811 (1994). The "goodwill" of a business is commonly understood as the

> " 'favor or advantage in the way of custom that a business has acquired beyond the mere value of what it sells whether due to the personality of those conducting it, the nature of its location, its reputation for skill or promptitude or any other circumstance incidental to the business and tending to make it permanent.' *Webster's Third New Int'l Dictionary*, 979 (unabridged ed 1993)."

*Weakley and Weakley*, 177 Or App 363, 368-69, 33 P3d 1045 (2001). However, Oregon courts have declined to assign a value for goodwill when there is no evidence in the record that any goodwill exists. *Smith and Smith*, 168 Or App 349, 356-57, 7 P3d 559 (2000). Here, husband and wife agreed at trial that the business had no goodwill value. Our review of the record confirms that conclusion. Because the record is completely devoid of any evidence of the goodwill value of the trucking business, the trial court erred in assigning any value to the business for goodwill. Accordingly, the equalizing judgment in favor of wife should be reduced by $5,000.

██ Husband also assigns error to the way that the trial court ordered that the equalizing judgment be satisfied.[3] Husband contends that, by ordering some of his business assets to be sold in order to satisfy the line of credit and the equalizing judgment, the court effectively took away the assets necessary to run the company and produce income for his living. In the alternative, he suggests that wife be awarded some of the business trucks and the Corvette and that the line of credit debt be divided between them.

██ The division of property must be "just and proper in all the circumstances." ORS 107.105(1)(f). In the case of a

---

[3] Other than the goodwill value attributed to the business, neither party contests the amount of the equalizing judgment.

long-term marriage, the parties should be "awarded the resources for self-sufficient, post-dissolution life apart insofar as possible within the limitations of the capabilities and property of the parties." *Haguewood and Haguewood*, 292 Or 197, 207, 638 P2d 1135 (1981). When a business is at issue and

> "[w]here division of the principal asset [the business] would necessarily dissipate its value and where alternative means can be found for dividing the financial benefit of the asset, the asset should be awarded intact to the spouse best able to manage it and other forms of balancing awards of property or support should be employed."

*Id.* at 208.

The record reveals that husband has only three sources for satisfying the equalizing judgment he owes wife: he can sell business assets, he can sell or refinance his real property, namely the Wejocuma Lane property, or he can sell some personal vehicles. However, we see no reason to limit, as the trial court did, which of those options husband may choose to satisfy the judgment.[4] The only limitation on the method by which husband may satisfy the equalizing judgment is that he secure the judgment with a second mortgage against the Wejocuma Lane property and that he satisfy the judgment by October 16, 2003. We therefore modify the judgment as follows:

> "Respondent shall satisfy the Wells Fargo Advanceline debt. Petitioner is awarded a judgment against Respondent in the amount of $115,451 to equalize the division of the parties' assets, to be paid by October 16, 2003. That judgment debt shall be secured by a second mortgage on the Wejocuma Lane property in the amount of $115,451. Respondent shall promptly execute and deliver the mortgage to petitioner."[5]

---

[4] Husband contends that we should take into consideration the tax consequences of selling his business assets. However, because no evidence was presented below regarding tax consequences, we refuse to consider them now. *See Bidwell and Bidwell*, 170 Or App 239, 243, 12 P3d 76 (2000), *adhered to on recons*, 172 Or App 292, 18 P3d 465, *rev den*, 332 Or 305 (2001).

[5] The reduction in the equalizing judgment from $120,451 to $115,451 reflects the amount of goodwill that we held was error to attribute to the value of the business.

We note that our modification adheres to the trial court's requirement that husband satisfy the Wells Fargo Advanceline debt. Our decision that husband is not restricted to the sale of business assets to satisfy the equalizing judgment applies equally to satisfaction of the Wells Fargo Advanceline debt. Although husband is still required to satisfy that debt, he may do so either through the sale of personal, business, or real property assets or by taking out loans against those assets.

Judgment modified to provide for an equalizing judgment in favor of wife in the amount of $115,451, payable by October 16, 2003, and secured by second mortgage on Wejocuma Lane property; otherwise affirmed.